## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

MERLINE GALLEGOS and ISAIAS AMAYA, as
Guardians of HECTOR MARTINEZ-GALLEGOS,
and HECTOR MARTINEZ-GALLEGOS,

Plaintiffs,

vs.                                                        No. 2:24-cv-00809-WJ-GJF

BOARD OF EDUCATION OF LAS CRUCES
PUBLIC SCHOOLS and ERIC FRAASS,

Defendants.

## <u>MEMORANDUM OPINION AND ORDER DISMISSING THE COMPLAINT</u>

THIS MATTER comes before the Court on Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  (Motion) (Doc. 9).  Plaintiffs bring this lawsuit against Las Cruces Public Schools (LCPS) and Eric Fraass, principal of Mayfield High School, to recover compensatory damages under Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act after their son was shot off campus during school hours.  Having reviewed the parties' submissions and applicable law, the Court finds that the motion is well-taken and shall be granted with respect to the claims under the ADA and the Rehabilitation Act.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(a).  The Complaint is therefore DISMISSED.

## I.    BACKGROUND

On the last Friday in August 2022, the bell rang, and students spilled out of the Las Cruces public schools en masse to enjoy the lunch hour.  Among the lunch goers was Hector Martinez-Gallegos, a junior at Mayfield High School (Mayfield).  Mr. Martinez-Gallegos left Mayfield's campus and walked across the street to the parking lot of a burger restaurant frequently patronized by students.  He encountered a group of peers in a car on their way to a park on a nearby residential block — a popular meeting spot for young people during school hours.  Compl. ¶¶ 48, 49.  Mr. Martinez-Gallegos got into the back seat of the car and rode for one or two minutes to the park.  *Id.* ¶¶ 48, 50.  While seated in the back of the parked car, Mr. Martinez-Gallegos was shot in the face.  He suffered severe injuries as a result.

Las Cruces Public Schools (LCPS) has adopted a "Closed Campus Rule" that provides: "All school campuses – elementary, middle and high school – are closed." *Id.*  ¶ 6.  Despite this policy, upper class students are permitted to leave campus during the lunch hour if they meet certain requirements: (1) maintaining a grade point average of at least 3.0; (2) obtaining written parental permission; and (3) satisfying certain attendance and credit requirements.  Students with off campus privileges are issued an "off campus sticker" for their school identification cards.  *Id.* ¶ 7.  Mr. Martinez-Gallegos did not satisfy any of the prerequisites for obtaining off campus privileges and therefore did not have a sticker on his ID.  *Id.* ¶ 55.

No Mayfield staff member "questioned, carded or stopped" Mr. Martinez-Gallegos when he left campus on August 26, 2022.  *Id.* ¶ 46.  Indeed, "no students were asked to show a photo ID" upon exit.  *Id.*  Mayfield's enforcement of the Closed Campus Rule was "lax or

nonexistent," and students "routinely left in groups at lunch to congregate in nearby locations . . . without any monitoring." *Id.* ¶ 55.

According to the Complaint, at the beginning of the 2022–23 academic year, LCPS education records showed:

- Student is expected to participate in ROTC classes and activities throughout high school with career goal of military duty after high school;
- Mayfield High School teachers and Parents know that [Mr. Martinez-Gallegos] was unusually susceptible to negative, unsafe peer influences;
- Parent emphasized to Mayfield High School that "she would like teachers and staff to keep a closer eye on Hector";
- Student's skill deficits are related to his disability.

Compl. ¶ 42 (alteration omitted).

It is undisputed that at the time of the incident, Mr. Martinez-Gallegos had an individualized education program "based on a 'specific learning disability,'" pursuant to the Individuals with Disabilities Education Act. Mot. at 2; *see* 20 U.S.C. § 1414(d)(1)(A). It is also undisputed that in October 2023 – a little over a year after the incident – Mr. Martinez-Gallegos was diagnosed with Autism Spectrum Disorder, Attention Deficit Hyperactivity Disorder, generalized Anxiety Disorder, generalized Depressive Disorder and Post Traumatic Stress Disorder. Mot. at 11.

Mr. Martinez-Gallegos's mother and stepfather, Ms. Gallegos and Mr. Amaya, bring suit on Mr. Martinez-Gallegos's behalf, seeking compensatory damages based on Defendants' alleged violation of Title II of the Americans with Disability Act (ADA) and Section 504 of the Rehabilitation Act. They also allege Defendants' conduct amounted to negligence under

New Mexico law and violated Mr. Martinez-Gallegos's rights under the New Mexico constitution. This Court has federal question jurisdiction over the ADA and Rehabilitation Act claims, 28 U.S.C. § 1331, and supplemental jurisdiction over the state tort and constitutional claims. *Id.* § 1367(a).

## II.    DISCUSSION

Having reviewed the well-pled facts in the Complaint and the parties' arguments, the Court finds that the Complaint fails to state a plausible claim for relief under the ADA or the Rehabilitation Act.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See id.* § 1367(c)(3).

### A.    STANDARD OF REVIEW UNDER RULE 12(B)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the facts alleged in the Complaint must be sufficient to establish a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is plausible if it is supported by "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of its Rule 12(b)(6) review, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Secs. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015).  Legal conclusions are not entitled to an assumption of truth, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

**B.    APPLICABLE LAW**

**i.    The Rehabilitation Act § 504**

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides: "No otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  To state a claim under Section 504, the plaintiff must allege: (1) that he or she is "disabled under the Act"; (2) that he or she "would be 'otherwise qualified to participate in the program'"; (3) "that the program receives federal financial assistance"; and (4) "that the program has discriminated against the plaintiff." *Sullivan v. Univ. of Kan. Hosp. Auth.*, 844 F. App'x 43, 48 (10th Cir. 2021) (unpublished) (quoting *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004)).

**ii.    ADA Title II**

Under Title II of the ADA, 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  To state a claim under this section, the plaintiff must allege: "(1) that he or she is a qualified individual with a disability; (2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016).  "The requirements for stating a claim under [the

ADA and the Rehabilitation Act] are substantially the same," *Sullivan*, 844 F. App'x at 48, and so the Court analyzes the two claims concurrently.

      iii.    **Intentional Discrimination**

To obtain compensatory damages under the ADA or the Rehabilitation Act, a plaintiff must show that the alleged discrimination was intentional. *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152–53 (10th Cir. 1999). In the context of ADA and Rehabilitation Act claims concerning students with disabilities, the Supreme Court has recently reaffirmed that intent embodies deliberate indifference. *A.J.T. ex rel. A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 336, 344–45 (2025). The Tenth Circuit has held that "[t]he test for deliberate indifference in the context of intentional discrimination comprises" two elements: "(1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that . . . likelihood.'" *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1229 (10th Cir. 2009) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1129, 1139 (9th Cir. 2001)). While this standard does not require a showing of "personal ill will or animosity toward the disabled person," a "failure to act is a result of conduct that is more than negligent and involves an element of deliberateness." *Id.*; *A.J.T.*, 605 U.S. at 344–45.

In response to the Motion, Plaintiffs contend that whether Mr. Martinez-Gallegos was intentionally discriminated against is not a component of a claimant's prima facie case under Title II or Section 504 and therefore may not be decided as a question of law. Doc. 14, at 18 n.3. Not so. Courts in this circuit have routinely evaluated similar claims in the same procedural posture for plausibility of intentional discrimination. *See, e.g.*, *Dorsey v. Pueblo Sch. District 60*, 140 F.Supp.3d 1102, 1116–17 (D. Colo. 2015); *A.V. ex rel. Hanson v. Douglas Cnty. Sch. Dist.*

*RE-1*, 586 F.Supp.3d 1053, 1065–66 (D. Colo. 2022); *Callaway v. Indep. Sch. Dist. No. 1 of Okmulgee Cnty.*, No. CIV-21-51-SLP, 2025 WL 1919324, at *15–16 (E.D. Okla. July 11, 2025). Given that intentional discrimination is the sole theory entitling a plaintiff to compensatory damages under Title II or Section 504, intentionality is a prerequisite of Plaintiffs' claim under either statutory provision. *See* Compl. ¶ 104; *see also Twombly*, 550 U.S. at 570 (to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must show facts "necessary to state his claim and the grounds showing entitlement to relief.").

Plaintiffs also note that Title II and Section 504 embrace a greater spectrum of rights than protection against intentional discrimination. Doc. 14, at 18. Be that as it may, as pled, the Complaint makes quite clear that here, the alleged violations are based on "intentional discrimination." Compl. ¶¶ 94, 98; *see* ¶ 93 ("The failure to enforce the Closed Campus Rule on August 26, 2022 was *deliberately indifferent to* Mr. Martinez-Gallegos's safety and well-being . . . ."); ¶ 97 ("Mr. Martinez-Gallegos was denied the benefits of public education, as alleged, *by reason of* his disability.") (emphases added). Should Plaintiffs intend to plead violations of another sort, the Complaint does not make that clear. *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true, and we will not consider evidence or allegations outside the four corners of the complaint in reviewing the district court's Rule 12(b)(6) dismissal.") (citations omitted)).

### C. SUFFICIENCY OF THE ALLEGATIONS REGARDING INTENTIONAL DISCRIMINATION UNDER THE ADA AND REHABILITATION ACT

The Complaint asserts that LCPS violated the Rehabilitation Act when Mayfield staff allowed Mr. Martinez-Gallegos to leave campus on August 26, 2022. Specifically, the Complaint alleges that "[t]he failure to enforce the Closed Campus Rule on August 26, 2022 was deliberately indifferent to Mr. Martinez-Gallegos's safety and well-being since the School District knew he needed to be closely watched, that he was prone to poor judgment and unsafe behavior," that he did not meet the criteria for off campus privileges and that he had "been leaving" campus "during the noon hour" despite lacking authorization. Compl. ¶¶ 91, 93. Although the ADA claim is recited in four meager paragraphs, it appears the pertinent factual allegations mirror those underlying Plaintiffs' Rehabilitation Act claim. *Id.* ¶¶ 95–98.

Defendants move to dismiss Plaintiffs' ADA and Rehabilitation Act claims, asserting that, as alleged in the Complaint, "no students were asked to show a photo ID with the required 'off campus sticker.'" Mot. at 13. Since "Plaintiffs fail to plausibly allege that [Mr. Martinez-Gallegos] was treated any differently because of his disability," Defendants argue Plaintiffs have failed to state a claim under the ADA or Rehabilitation Act.

\*\*\*

The Court assumes for purposes of this motion that the Complaint plausibly alleges that Mr. Martinez-Gallegos is a qualified person with a disability under the Acts. Defendants do not contest that LCPS qualifies as a public entity receiving federal funding. The question, then, is whether the Complaint sufficiently pleads that LCPS intentionally denied Mr. Martinez-Gallegos a benefit of its services, programs, or activities or otherwise discriminated against him because of

his disability by way of deliberate indifference to his federal rights. *See J.V.*, 813 F.3d at 1295; *Barber*, 562 F.3d at 1229. More specifically, the question is whether Mayfield's lax enforcement of the Closed Campus Rule yields a plausible inference that it acted with "deliberate indifference to the strong likelihood" that its inaction would "likely result in a violation of" the ADA or the Rehabilitation Act. *See Powers*, 184 F.3d at 1153. The Court concludes that the answer is no. The Complaint does not plausibly allege that LCPS acted with deliberate indifference to a strong likelihood that its enforcement deficiencies would result in the violation of Mr. Martinez-Gallegos's rights under the ADA or the Rehabilitation Act.

The Complaint alleges that Mayfield staff were warned that Mr. Martinez-Gallegos needed to be "closely watched." Compl. ¶ 55. Additionally, the Complaint states that LCPS records showed that Mayfield "teachers and parents know that [Mr. Martinez-Gallegos] was unusually susceptible to negative, unsafe peer influences"; that Mr. Martinez-Gallegos' mother told Mayfield that "she would like teachers and staff to keep a closer eye" on him; and that "Student's skill deficits are related to his disability." *Id.* ¶ 42.

These allegations render it plausible that Mr. Martinez-Gallegos, like many young people, is susceptible to peer pressure — a pattern that does not require a psychology degree to apprehend. *See Lee v. Weisman*, 505 U.S. 577, 593 (1992) ("Research in psychology supports the common assumption that adolescents are often susceptible to pressure from their peers towards conformity, and that the influence is strongest in matters of social convention."). These alleged facts also suggest that Mr. Martinez-Gallegos's mother is a concerned parent, and that Mr. Martinez-Gallegos has a learning disability that hinders his skill development. For purposes of its Rule 12(b)(6) review, the Court assumes that LCPS's records alerted Mayfield staff that Mr.

Martinez-Gallegos needed close supervision.  Nonetheless, these allegations do not support that LCPS knew that Mr. Martinez-Gallegos's disability predisposed him to leave campus without authorization.

Plaintiffs also allege that LCPS knew that Mr. Martinez-Gallegos "had been leaving the Mayfield High School campus during the noon hour without authorization."  Compl. ¶ 93. Assuming that is true, the Complaint does not indicate that LCPS had reason to believe that Mr. Martinez-Gallegos previously left school during the noon hour because of disability-related limitations, as opposed to some other equally plausible reason, such as a desire to spend time with his peers, of whom some may have had off campus privileges, or were similarly leaving campus without authorization.  Considered together, these facts do not support a reasonable inference that LCPS was aware that Mr. Martinez-Gallegos's disability made it likely that he would leave campus during the noon hour in violation of the Closed Campus Rule.  Nor do the facts indicate that LCPS was on notice that students with disabilities generally were more likely to violate the rule.

The Complaint sets forth facts indicating that the school district was aware that many students frequently left campus during the noon hour (with or without authorization) and that conditions in Las Cruces made that endeavor unsafe.  *See* Compl. ¶¶ 47; 49; 55.  The Complaint highlights evidence of "gun violence in the community," including "near school campuses."  *Id.* ¶ 55.  The Complaint identifies one incident in the month prior to the instant events, where another student was shot near the campus of a different high school after school hours.  *Id.* ¶ 53.  Although these facts may support LCPS's negligence in failing to uphold its Closed Campus Rule, they do not allow an inference that LCPS acted with deliberate disregard for

its disabled students' rights under federal law.  *Cf. Barber*, 562 F.3d at 1229 ("failure to act [is] a result of conduct that is more than negligent and involves an element of deliberateness.").

Plaintiffs suggest that LCPS laxly enforced the Closed Campus Rule with respect to all students under its watch.  The claimants allege LCPS "created a dangerous condition for *all* high school students at Mayfield High School" and "allow[ed] the District's Closed Campus Rule to be ignored and bypassed *routinely*" by "unqualified students."  Compl. ¶ 75 (emphasis added). Indeed, the Complaint alleges that "no students were asked to show a photo ID with the required 'off campus sticker.'" *Id.* ¶ 46.  The Complaint thus makes clear that LCPS's implementation of the Closed Campus Rule was not selective.  In other words, a student's disability status played no role in whether they were permitted to leave campus.  Treating everybody the same, regardless of disability status, is antithetical to a claim of intentional discrimination "by reason of" disability. *J.V.*, 813 F.3d at 1295; *see also Patton v. TIC United Corp.*, 77 F.3d 1235, 1246 (10th Cir. 1996) ("Because the damages limitation applies to all victorious plaintiffs, Patton was not denied access to a jury determination of damages *by reason of disability*.") (emphasis added).

The Complaint alleges that LCPS's disabled students are "more vulnerable based on disability-related limitations," and that Mayfield's enforcement deficiencies created a particular risk for those students.  Compl. ¶¶ 12, 76.  In this way, Plaintiffs' theory implies disparate impact. But, as explained, in this circuit, compensatory relief under the Rehabilitation Act and the ADA is only available to Plaintiffs who prove intentional discrimination.  *Powers*, 184 F.3d at 1153. Plaintiffs may well be right that students with certain disabilities are more likely to exercise unsafe judgment and therefore be more apt to behave in a way that violates the rules.  However, by the same token, as alleged in the Complaint, LCPS students "routinely" left campus during the noon

hour without authorization, regardless of disability status.  The Complaint does not contain facts suggesting that disabled students were treated *more* carelessly than non-disabled students.

***

Because the Complaint fails to sufficiently allege an essential element of a claim for disability discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act, it must be dismissed as to each claim.  The balance of Plaintiffs' claims involve alleged violations of state law.  Exercising its discretion pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over those claims.

THEREFORE the Court GRANTS Defendant's Motion (Doc. 9) **IN PART.**  The federal ADA and Rehabilitation Act claims in the Complaint are **DISMISSED WITH PREJUDICE.**[1]  All remaining state law claims are **DISMISSED** for lack of jurisdiction due to the Court's decision not to exercise supplemental jurisdiction over those claims.[2]  The state law claims are **DISMISSED WITHOUT PREJUDICE.**

/s/

_____
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

_____

[1]    On this record, the Court finds that allowing leave to amend the Complaint would be futile.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend may be denied when amendment would be futile); *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (holding that a district court may deny leave to amend if the amendment would be futile and that a proposed amendment is futile if subject to dismissal).

[2]    Although the Court grants the Motion to Dismiss only in part, in declining to exercise supplemental jurisdiction over the remaining state claims, this Memorandum Opinion and Order terminates all claims in this case.